**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristal Ratliff, | No. CV-18-00846-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Kristal Ratliff's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 20, Pl.'s Br.), Defendant SSA Commissioner's Opposition (Doc. 21, Def.'s Br.), and Plaintiff's Reply (Doc. 24, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 16, R.) and reverses the Administrative Law Judge's decision (R. at 21–37) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed her Application for Disability Insurance Benefits on February 26, 2014 for a period of disability beginning June 7, 2013. Plaintiff's claim was denied initially on July 7, 2014, and upon reconsideration on February 12, 2015. Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on November 21, 2016. (R. at 48–76.) On January 26, 2017, the ALJ denied Plaintiff's Application. (R. at 21–37.) On

January 25, 2018, the Appeals Council upheld the ALJ's decision. (R. at 1–3.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: fibromyalgia; cognitive disorder; sleep apnea; cervical degenerative disc disease; attention deficit hyperactivity disorder; depressive disorder; anxiety disorder; obesity; and polyneuropathy. (R. at 23.)

Ultimately, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404." (R. at 24.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)" in a role such as document preparer, address clerk, or call-out operator. (R. at 35–36.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the opinions of Plaintiff's treating physicians; and (2) the ALJ erred by discrediting Plaintiff's symptom testimony. (Pl.'s Br. at 1.)

### A. The ALJ Erred by Discrediting the Opinions of Plaintiff's Treating Physicians

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but

did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ assigned little weight to the opinions of Plaintiff's treating physicians, which included: Dr. Alan Mallace, a rheumatologist; Dr. Elena Korniychuk, a neurologist; Dr. Supriya Nair, a psychiatrist; Dr. Stephen Callaghan, a psychiatrist; and Dr. Vanessa Chang, a psychiatrist. (R. at 32–34.) Plaintiff argues that the ALJ erred in discrediting the opinion of each of these doctors. (Pl.'s Br. at 15.) For the following reasons, this Court agrees.

The ALJ discredited Dr. Mallace's opinion for two reasons. First, the ALJ discredited it because it "included limitations so extreme that the [Plaintiff] would be bedridden," rather than an individual who, as Plaintiff did, performed activities of daily living independently, operated a motor vehicle, and attended her child's sporting events. (R. at 32.) Based on their continuous treatment relationship, Dr. Mallace concluded that Plaintiff suffered from severe pain and fatigue. (R. at 975.) As a result, in an eight-hour workday, he concluded Plaintiff was capable of lifting something less than ten pounds on occasion, standing or walking for less than two hours, and sitting for thirty minutes. (R. at 977.) Additionally, Plaintiff would need to alternate between sitting and standing every ten to fifteen minutes. (R. at 977.) Although these limitations are significant, they do not describe a bedridden individual.

Indeed, they are not inconsistent with the ability to perform activities of daily living independently, operate a motor vehicle over short distances, or attend a child's sporting event. Accordingly, this was not a legitimate reason to reject Dr. Mallace's opinion.

Second, the ALJ concluded that Dr. Mallace's opinion "did not include an explanation for the conclusion reached and . . . was not consistent with available evidence of record." (R. at 32.) In Dr. Mallace's assessment of Plaintiff's residual functional capacity and ability to do work related physical activities, he noted that Plaintiff suffered from fibromyalgia, which was diagnosed according to the American College of Rheumatology's criteria (R. at 974); a degenerative disc in her lumbar spine (R. at 974); and musculoskeletal instability (R. at 979). As the ALJ agreed, these impairments could be expected to cause the symptoms Dr. Mallace observed in Plaintiff. (R. at 27.) These conclusions were consistent with Dr. Mallace's own observations. In his treatment records, Dr. Mallace's noted Plaintiff's three-year history of widespread pain that was compatible with fibromyalgia and unresponsive to pharmacologic intervention. (R. at 1243.) Further, he noted Plaintiff suffered from fatigue (R. at 1241), had unstable coordination and balance, and had an inability to sit or stand more than ten minutes without changing posture (R. at 1240). Thus, the ALJ erred in finding Dr. Mallace's opinion did not include an explanation for the conclusions he reached and was not consistent with the available evidence of record.

The ALJ discredited Dr. Korniychuk's opinion for four reasons. First, the ALJ discredited it because the ALJ concluded that Dr. Korniychuk did not have a long-term treating relationship with the Plaintiff. (R. at 32.) Dr. Korniychuk served as Plaintiff's neurologist from September 2014 to April 2015. (R. at 850, 859, 864.) During this time, Plaintiff saw Dr. Korniychuk on three different occasions regarding pain and a "balance problem," among other things, spending over forty minutes with Dr. Korniychuck on at least two of these occasions. (R. at 859, 864.) A treating physician's opinion is given controlling weight where medically approved diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Here, there is no argument that the diagnostic

techniques Dr. Korniychuk used to form her opinion (R. at 854–55, 858–59, 862–63) were not medically approved, and her opinion is consistent with other substantial evidence, namely the evidence Plaintiff's other treating physicians gathered, which the ALJ used to conclude that Plaintiff suffered from impairments that could cause the symptoms Plaintiff alleged (R. at 27). Accordingly, the ALJ erred in discrediting Dr. Korniychuk's opinion based on the length of Dr. Korniychuk's treating relationship with Plaintiff.

Second, like Dr. Mallace, the ALJ discredited Dr. Korniychuk's opinion because the limitations described "were so extreme that an individual with the assessed limitations would be bedridden." (R. at 33.) Like Dr. Mallace, Dr. Korniychuk found that Plaintiff suffered from pain and had difficulty sitting and standing for extended periods of time. (R. at 666.) As a result, Dr. Korniychuk concluded Plaintiff could not work "continuously for more than [fifteen] minutes." (R. at 666.) Again, the ALJ exaggerates the severity of these limitations. An individual suffering from these limitations could perform activities of daily living independently, operate a motor vehicle over short distances, and attend her child's sporting events. Accordingly, this was not a legitimate reason to reject Dr. Korniychuk's opinion.

Third, the ALJ discredited Dr. Korniychuk's opinion because he found it was inconsistent with available records, "which showed that examination results were remarkably inconsistent with the [Plaintiff's] subjective limitations." (R. at 33.) Without further explanation, the ALJ cited a forty-four page exhibit as support. (R. at 33.) Dr. Korniychuk diagnosed Plaintiff with chronic low back pain, chronic neck pain, fibromyalgia, and chronic pain disorder (R. at 863) after performing a series of diagnostic tests on three different occasions (R. at 854–55, 858–59, 862–63) and reviewing the results of an EMG and MRI (R. at 666). Thus, Dr. Korniychuk developed a record and based her opinion on it. Moreover, her opinion is consistent with Dr. Mallace's medical records. Therefore, this is not a specific, legitimate reason supported by substantial evidence for rejecting or discrediting Dr. Korniychuk's opinion.

Fourth, the ALJ appears to accuse Dr. Korniychuk of deciding an issue properly left for the Commissioner of the SSA, namely whether Plaintiff is disabled under the Act. (R. at

33.) Dr. Korniychuk, however, made no such conclusion. Rather, she outlined the limitations Plaintiff experienced as a result of Plaintiff's diagnosed impairments. (R. at 665–66.)

The ALJ discredited Dr. Chang's opinion for three reasons. First, the ALJ discredited it because "[Dr. Chang] simply checked boxes on the form and failed to provide explanations for the conclusions reached." (R. at 34.) Between November 29, 2012, and October 24, 2013, Plaintiff attended six therapy sessions with Dr. Chang, each lasting about thirty minutes. (R. at 309, 316, 323, 335, 340, 345.) Thus, to the extent Dr. Chang simply "checked boxes" on the mental health questionnaires she completed for Plaintiff, Dr. Chang's conclusions were based on independent clinical findings based on examination. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (explaining that an examining physician provided independent clinical findings where "instead of a conclusory 'diagnosis' consisting of 'check marks in boxes on a form supplied by the Secretary,' [the examining physician's] findings rested on his own neurological examination of [claimant]."). Therefore, this was not a legitimate reason to discredit Dr. Chang's opinion.

Second, like Drs. Mallace and Korniychuk, the ALJ discredited Dr. Chang's opinion because the "limitations were so extreme that an individual with the assessed limitations would be bedridden." (R. at 34.) According to Dr. Chang, Plaintiff suffered from generalized anxiety disorder, hypersomnia, major depressive episode, and attention deficit disorder. (R. at 310, 341, 357.) Plaintiff was often tearful and struggled with fatigue and concentration. (R. at 359.) As a result of these ailments, Dr. Chang concluded Plaintiff would miss more than three days of work per month. (R. at 341, 355.) Again, these limitations would not render an individual bedridden. Indeed, Plaintiff noted in her appointment with Dr. Chang on October 24, 2013, that she had one good day per week, which would have allowed Plaintiff to engaged in these activities. Accordingly, this was not a legitimate reason to discredit Dr. Chang's opinion.

Third, the ALJ found Dr. Chang's opinion "was not supported by clinical findings and treatment records." (R. at 34.) As noted above, Dr. Chang provided in-person therapy to Plaintiff on six different occasions between November 29, 2012, and October 24, 2013. (R.

at 309, 316, 323, 335, 340, 345.) During this time, Dr. Chang made clinical findings and developed treatment records, both of which she relied on to support her opinion. Accordingly, this was not a legitimate reason to discredit Dr. Chang's opinion.

Finally, for the same reasons the ALJ erred in discrediting the opinions of Drs. Mallace, Korniychuk, and Chang, the ALJ erred in discrediting the opinions of Drs. Nair and Callaghan. (R. at 33.)

### B. The ALJ Must Reevaluate Plaintiff Testimony

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted).

The ALJ discredited Plaintiff's testimony regarding the frequency and intensity of pain throughout her body caused by fibromyalgia because it "was inconsistent with observations and reports made by treating and examining sources." (R. at 28.) Specifically, according to the ALJ, "available treatment records showed that treating and examining sources routinely observed and reported that the [Plaintiff] was in no apparent or acute distress," and "[i]t was reasonable to expect that treating and examining sources would observe and report levels of distress consistent with the [Plaintiff's] subjective allegations." (R. at 28.) On multiple occasions, Drs. Mallace and Korniychuk observed that Plaintiff suffered from chronic pain. (R. at 855, 859, 863, 1240.) Further, "SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days'"; thus, "after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'" *Revels*, 874 F.3d at 657. Because fibromyalgia is among Plaintiff's impairments, Plaintiff's testimony regarding the frequency and intensity of her pain should be reanalyzed with the above principle in mind.

The ALJ also found Plaintiff's reported activities were inconsistent with her subjective limitations and difficulties with concentration. (R. at 30, 31.) These activities

included reading (R. at 30), watching television (R. at 30), dancing (R. at 31), and attending her child's sporting events (R. at 31). Although Plaintiff reported that she watched television and read daily, she also noted that it was difficult to focus on and understand what she watched and read. (R. at 238.) Similarly, on one occasion, Plaintiff reported to her physical therapist that she did some dancing and walking while on a visit to Arizona from Wisconsin, but she did not provide any additional detail and noted that she was exhausted. (R. at 449.) Further, about a month later, Plaintiff noted that she had to stop dancing because of her condition. (R. at 239.) Lastly, although Plaintiff attends her son's sporting events, she noted that she has difficulty with the noise and crowds and struggles to sit on the bleachers. (R. at 239.) Although the ALJ may determine Plaintiff lacks credibility, Plaintiff's reported daily activities should be reanalyzed taking the above into consideration.

### C. Credit-as-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than further proceedings. (Pl.'s Br. at 27.) The credit-as-true rule only applies in cases that raise "rare circumstances" that permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must fail to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

The Court has reviewed the record and agrees with Defendant that the record is not fully developed and that uncertainty remains as to whether Plaintiff is disabled under the Act. The reasons the ALJ provided for discrediting the opinions of Plaintiff's treating physicians were not legitimate. In light of this, the ALJ must reanalyze these opinions without considering those reasons. Additionally, the ALJ must reanalyze Plaintiff's symptom testimony, considering the unique nature of fibromyalgia and the extent of Plaintiff's daily activities.

For all the foregoing reasons, the Court will remand this matter to the ALJ for further development of the record and a disability determination.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this Order. Specifically, the ALJ must reanalyze (1) the opinions of Plaintiff's treating physicians without considering the invalid reasons provided for discrediting them; and (2) Plaintiff's symptom testimony, considering the unique nature of fibromyalgia and the extent of Plaintiff's daily activities.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 5th day of July, 2019.

Honorable Diane J. Humetewa
United States District Judge